No. 04-0133C
(Chief Judge Damich)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

ILLINOIS POWER COMPANY

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

---

# DEFENDANT'S MOTION TO STAY ALL PROCEEDINGS OR, IN THE ALTERNATIVE, FOR COORDINATED DISCOVERY REGARDING RATE AND SCHEDULE ISSUES

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Scott R. Damelin
SCOTT R. DAMELIN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
MARTHA S. CROSLAND
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

March 30, 2004

Attorneys for Defendant

TABLE OF CONTENTS

PAGE(S)

ISSUES PRESENTED . . . . . 2

STATEMENT OF THE CASE . . . . . 2

I. Nature of the Case . . . . . 2

II. The Standard Contract . . . . . 2

III. Proceedings Before The Court of Federal Claims . . . . . 4

ARGUMENT . . . . . 8

I. THE COURT SHOULD STAY THIS CASE UNTIL FINAL RESOLUTION OF THE COMMONWEALTH EDISON, YANKEE ATOMIC AND INDIANA MICHIGAN CASES . . . . . 8

A. The Standard For Considering A Stay . . . . . 8

B. A Stay Is Appropriate At This Time . . . . . 9

1. This Matter Is Closely Related To The Indiana Michigan, Commonwealth Edison, And Yankee Cases . . . . . 9

2. Absent A Stay, There Is A Possibility of Inconsistent Rulings, Giving Rise To Great Hardship Upon The Government . . . . . 9

3. The Requested Stay Is Of A Reasonable Duration . . . . . 11

II. IF THE COURT DOES NOT GRANT A STAY, COORDINATED DISCOVERY IS NECESSARY . . . . . 12

CONCLUSION . . . . . 14

# TABLE OF AUTHORITIES

CASES PAGE(S)

C3, Inc. v. United States,
5 Cl. Ct. 659, 660 (1984) (citing Landis, 299 U.S. at 255) . . . . . . . . . . . . . . . . . . . . 8

Commonwealth Edison v. United States,
56 Fed. Cl. 652 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Indiana Michigan Power Co. v. United States,
57 Fed. Cl. 88 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Indiana Michigan Power Company v. Department of Energy,
88 F.3d 1272 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Landis v. North American Co.,
299 U.S. 248 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Maine Yankee Atomic Power Co. v. United States,
225 F.3d 1336 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Northern States Power Co. v. United States,
224 F.3d 1361 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Northern States Power Co. v. United States,
43 Fed. Cl. 374 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Northern States Power Company v. Department of Energy,
128 F.3d 754 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Yankee Atomic Power Company v. United States,
42 Fed. Cl. 223 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

TABLE OF AUTHORITIES (cont'd)

PAGE(S)

DOCKETED CASES

Commonwealth Edison Co. v. United States, No. 98-621C (Hewitt, J.) . . . . . . . . . . . 1, 12

Florida Power & Light Co. v. United States, No. 98-483C (Fed. Cl.) . . . . . . . . . . . . . . . . 7

Indiana Michigan Power Co. v. United States, No. 98-486C (Hodges, J.) . . . . . . . . . 1, 12

Yankee Atomic Electric Co. v. United States, No. 98-126C (Senior Judge Merow) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12

STATUTES AND REGULATIONS

42 U.S.C. §§ 10101-10270 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

42 U.S.C. § 10131(a)(4)-(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

42 U.S.C. § 10222(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

42 U.S.C. § 10222(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Standard Contract for Disposal of Spent Nuclear Fuel And/Or High-Level Radioactive Waste ("Standard Contract"), 10 C.F.R. § 961.11 (1983) . . . . . . . . . . 2, 3

10 C.F.R. § 961.11, Art. II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

10 C.F.R. § 961.11, Art. IX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

MISCELLANEOUS

Restatement (Second) of Contracts § 211 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ILLINOIS POWER COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-0133C |
| | ) | (Chief Judge Damich) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO STAY ALL PROCEEDINGS OR, IN THE ALTERNATIVE, FOR COORDINATED DISCOVERY REGARDING RATE AND SCHEDULE ISSUES

Pursuant to Rule 7(b) of the Rules of the Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court stay all proceedings in this matter, including, but not limited to, defendant's obligations to respond to the complaint, until completion of the trials in Commonwealth Edison Co. v. United States, No. 98-621C (Hewitt, J.); Yankee Atomic Electric Co. v. United States, No. 98-126C (Senior Judge Merow); and Indiana Michigan Power Co. v. United States, No. 98-486C (Hodges, J.). Issues that are raised by the plaintiff in this case are being addressed in cases that are currently scheduled for trial in 2004.[1] Because it would be inefficient and potentially unjust to allow matters to proceed in this case while those same issues are being addressed at trial, we respectfully request that the Court stay all proceedings in this case until the resolution of the trials in Commonwealth Edison, Yankee Atomic, and Indiana Michigan. In the event that the Court chooses not to issue a stay in this case, we respectfully request that the Court , pursuant to RCFC 42, direct plaintiffs to pursue discovery on the rate and schedule issues and to do so in a manner that is coordinated among all the newly-filed SNF plaintiffs.

---

[1]The Indiana Michigan trial concluded on March 16, 2004. Yankee Atomic is scheduled to begin on July 12, 2004, to be completed seven weeks thereafter. Commonwealth Edison is scheduled to begin on November 30, 2004, to be concluded by December 10, 2004.

## ISSUES PRESENTED

1) Whether it is appropriate to stay the proceedings in this matter where significant investments of time and resources have already occurred in several closely-related, preexisting actions currently pending before the Court of Federal Claims, which address the same operative facts as the matter before this Court, and where a resolution of those matters, at a minimum, would be highly instructive upon this matter.

2) Whether, in the absence of a stay, the plaintiffs should be directed to pursue discovery on the rate and schedule issues in a manner that is coordinated with other plaintiffs with substantially similar claims.

## STATEMENT OF THE CASE

### I. Nature of the Case

This is one of a number of cases that were recently filed in this Court regarding the Government's failure to begin acceptance of spent nuclear fuel ("SNF") pursuant to the Standard Contract for Disposal of Spent Nuclear Fuel And/Or High-Level Radioactive Waste ("Standard Contract"), 10 C.F.R. § 961.11 (1983). The Standard Contract that was signed by all the SNF plaintiffs are essentially identical, raising the same issues relating to the rate and schedule of acceptance in each case. All the SNF plaintiffs are seeking damages for their additional costs of storing SNF because of DOE's failure to begin acceptance pursuant to the Standard Contract.

### II. The Standard Contract

Prior to 1983, the Department of Energy ("DOE") had no statutory, regulatory, or other legal obligation to accept or dispose of the SNF that a utility generated through its production of nuclear power. Rather, utilities were responsible for the storage and protection of the SNF that it had generated and that it would continue to generate. However, in 1983, Congress enacted the

Nuclear Waste Policy Act of 1982 ("NWPA"), 42 U.S.C. §§ 10101-10270. One of the purposes of the NWPA was "to establish the Federal responsibility, and a definite Federal policy, for the disposal of such waste and spent fuel." Id. § 10131(b)(2). In passing the NWPA, Congress included statutory findings that the public health and safety necessitated that the Government provide a solution for the permanent storage and disposal of SNF, although Congress also found that the costs of the interim and permanent storage and disposal of SNF were the responsibility of those entities that created the SNF. 42 U.S.C. § 10131(a)(4)-(5).

Pursuant to section 302(a) of the NWPA, 42 U.S.C. § 10222(a), the Secretary of Energy was "authorized to enter into contracts with any person who generates or holds title to [SNF] of domestic origin for the acceptance of title, subsequent transportation, and disposal of such [SNF]." 42 U.S.C. § 10222(a)(1). Further, the Secretary of Energy was barred from disposing of any SNF under the NWPA "unless the generator or owner of such [SNF] has entered into a contract with the Secretary under this section by not later than . . . June 30, 1983; or . . . the date on which such generator or owner commences generation of, or takes title to, such [SNF]; whichever occurs later." Id. § 10222(b)(2). As a result, DOE's obligation to dispose of a generator's SNF was conditioned upon the existence of a contract between the generator and DOE.

DOE implemented the requirements of section 302(a) of the NWPA by promulgating a "Standard Contract for Disposal of Spent Nuclear Fuel And/Or High-Level Radioactive Waste" ("Standard Contract"), 10 C.F.R. § 961.11 (1983). The Standard Contract required DOE to begin "[t]he services to be provided by DOE" under the Standard Contract "not later than January 31, 1998." 10 C.F.R. Part 961, Art. II. The basic terms of the Standard Contract into which each of the nuclear power reactor owners entered are virtually identical. While each Standard Contract

provides that the Government will begin its program of accepting SNF from the commercial nuclear industry by January 31, 1998, 10 C.F.R. § 961.11, Art. II, the Standard Contract does not specify any mandatory minimum "rate" at which DOE would be required to continue acceptance. Instead, the Standard Contract contained a contractual mechanism by which a queue for SNF acceptance would be developed that would determine the particular time in which DOE would accept SNF from each Standard Contract holder.

In 1995, DOE issued a final interpretation of certain provisions of the NWPA stating that it would not be able to begin accepting SNF by January 31, 1998 and that it did not have an unconditional statutory or contractual obligation to accept SNF in the absence of a repository or interim storage facility constructed under the NWPA. This position, and its progeny, resulted in decisions from the United States Court of Appeals for the D.C. Circuit concluding that DOE had an obligation to start disposing of the SNF no later than January 31, 1998, Indiana Michigan Power Company v. Department of Energy, 88 F.3d 1272, 1274-77 (D.C. Cir. 1996), and directing DOE to proceed with contractual remedies in a manner consistent with the NWPA's command that it undertake such an unconditional obligation. Northern States Power Company v. Department of Energy, 128 F.3d 754, 757-60 (D.C. Cir. 1997).

III. Proceedings Before The Court of Federal Claims

Beginning in 1998, Standard Contract holders filed complaints in the Court of Federal Claims, alleging that the Government breached the Standard Contract by failing to begin SNF acceptance by January 31, 1998. Initially, the Government sought to dismiss these complaints because the plaintiffs failed to seek a remedy from DOE pursuant to the Delays clause in the Standard Contract. 10 C.F.R. § 961.11, Art. IX. After a split of opinion developed on the issue of whether Standard Contract holders were required to exhaust their administrative remedies

before they could maintain an action in this Court, Yankee Atomic Power Company v. United States, 42 Fed. Cl. 223, 231-35 (1998), Northern States Power Co. v. United States, 43 Fed. Cl. 374, 388 (1999), the United States Court of Appeals for the Federal Circuit concluded that the Standard Contract holders were not required to exhaust their administrative remedies, Northern States Power Co. v. United States, 224 F.3d 1361, 1367 (Fed. Cir. 2000), and that, in at least three of the cases the Government's delay in beginning SNF acceptance constituted a breach of the Standard Contract. Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336, 1343 (Fed. Cir. 2000).

Following the Federal Circuit's decisions, it was readily apparent that a coordinated discovery process was necessary to permit the numerous cases that had been filed at that point to proceed. On January 9, 2001, the Government filed a motion requesting then-Chief Judge Baskir to reassign the pending SNF cases to a single judge for determination, in a consolidated proceeding, an acceptance and priority schedule regarding DOE’s obligation to accept SNF. The plaintiffs opposed the Government's motion and, instead, proposed that the parties participate in coordinated discovery on the rate and schedule issues. The Court deferred action upon the Government's consolidation motion and ordered a coordinated discovery proceeding. By July 2001, the parties had developed a plan to proceed with discovery for 15 of the 18 utility plaintiffs, and Judge Sypolt was tasked to preside over the coordinated discovery proceedings.

The Government filed several partially dispositive motions in November 2001. In all the pending SNF cases, the Government filed motions for partial summary judgment regarding the rate and sequence in which DOE was obligated to accept SNF pursuant to the Standard Contract. The Government also filed summary judgment motions on the issue of whether the Standard Contract applies to Greater-than-Class-C ("GTCC") radioactive waste. Where appropriate, the

Government also filed motions to dismiss takings and illegal exaction claims.

In January 2002, before any of the plaintiffs had responded to the Government's motions, plaintiffs began taking coordinated discovery regarding the rate and schedule issues.[2] Following the close of that process, most of the utility plaintiffs had filed responses to the Government's summary judgment motions. Many of the SNF plaintiffs also filed cross-motions for summary judgment. In January 2003, the Government requested a deferment of its right to take depositions regarding acceptance schedule issues pending resolution of the pending motions. However, several judges began to schedule or request proposals for further proceedings in individual cases. On February 14, 2003, the Government filed a second motion to the Chief Judge to renew consideration of the Government's pending motion to consolidate the SNF cases before a single judge.

On March 7, 2003, Chief Judge Damich issued an order that required the parties to identify all of the cases in which the Government's partial summary judgment motions were pending and presented the same or similar issues and arguments. On April 16, 2003, in response to the Government's request to reassign all of these cases to one judge, the Court issued a series of orders that culminated in the identification of a set of six "lead" cases in which the Government's partial summary judgment motions, which were pending in most of the SNF cases, would be decided.[3] Order (Apr. 16, 2003). Further consideration of the Government's motion to

---

[2]Because discovery was intended to permit the plaintiffs to respond to the Government's summary judgment motions, discovery was limited by the Court for most of the SNF plaintiffs. However, the Yankee plaintiffs proceeded on a separate discovery track which allowed them to take additional depositions of Government witnesses and permitted the Government to take depositions of Yankee witnesses.

[3]The Court designated the three Yankee cases (Merow, S.J.), Commonwealth Edison (Hewitt, J.), Indiana Michigan (Hodges, J.), and Florida Power & Light (Sypolt, J.), as the lead

consolidate the cases before a single judge was stayed until decisions on the pending motions were reached in the six "lead" cases. Order, at 2 (Apr. 16, 2003).

On June 10, 2003, a decision was issued in Commonwealth Edison. In that case, the Court denied the Government's motions for summary judgment concluding that it was premature for it to decide whether DOE is obligated to accept GTCC pursuant to the Standard Contract. Commonwealth Edison v. United States, 56 Fed. Cl. 652, 657-59 (2003). The Court did not reach a conclusion regarding the acceptance rate, choosing to determine that issue after trial. Id. at 667. A little more than two weeks later, the Court in Yankee Atomic adopted much of the Commonwealth Edison ruling for the Yankee cases. Order (June 26, 2003). In Indiana Michigan, the Court concluded that the parties' intent in signing the Standard Contract required that DOE begin performance "by collecting 400 metric tons of nuclear waste in 1998, and ramped up to 3,000 metric tons by the end of 2002 . . . [and that DOE] would have continued performance at a minimum rate of 3,000 tons thereafter." Indiana Michigan Power Co. v. United States, 57 Fed. Cl. 88, 99-100 (2003). The Indiana Michigan Court dismissed the GTCC issue as moot. The parties are still awaiting decision upon the Government's motions in Florida Power & Light Co. v. United States, No. 98-483C (Fed. Cl.) (Sypolt, J.).

After issuance of the decisions in Commonwealth Edison, Indiana Michigan, and Yankee Atomic, discovery proceeded in those three cases in preparation for trial. Shortly thereafter, utility plaintiffs which were not among the lead cases cited in the April 16 order, began requesting that the stay in their cases be lifted. See, e.g., Sacramento Municipal Utility District Motion filed July 11, 2003. Additionally, many new utility plaintiffs alleging claims arising from

---

cases.

DOE's breach of the Standard Contract began filing complaints in the Court of Federal Claims. To date, there are 66 SNF pending cases in the Court of Federal Claims. On January 30, 2004, Chief Judge Damich lifted the stay and denied the Government's request to consolidate.

## ARGUMENT

### I. THE COURT SHOULD STAY THIS CASE UNTIL FINAL RESOLUTION OF THE COMMONWEALTH EDISON, YANKEE ATOMIC AND INDIANA MICHIGAN CASES

#### A. The Standard For Considering A Stay

This Court has the inherent power to stay proceedings, and may do so with the "exercise of judgment, which must weigh competing interests and maintain an even balance." Landis v. North American Co., 299 U.S. 248, 255 (1936). The Court applies a three-part test in deciding a motion to stay one proceeding, pending the resolution of a separate proceeding. A stay is proper if: (1) the cases involve "substantially similar" or "related" issues; (2) the requesting party will suffer hardship or inequity if required to go forward; and (3) the requested stay is not of immoderate duration. C3, Inc. v. United States, 5 Cl. Ct. 659, 660 (1984) (citing Landis, 299 U.S. at 255). The circumstances presented by this case readily satisfy each of the criteria and, therefore, merit the entry of a stay during the pendency of the decisions in the Indiana Michigan, Commonwealth Edison, and Yankee cases.

B. A Stay Is Appropriate At This Time

1. This Matter Is Closely Related To The Indiana Michigan, Commonwealth Edison, And Yankee Cases

Only a cursory comparison of the complaint in this case with the Indiana Michigan, Commonwealth Edison, and Yankee cases establishes that they involve "substantially similar" and "related" issues. All of the relevant provisions of the 76 Standard Contracts that various nuclear utilities entered are virtually identical. The terms of all of those Standard Contracts were promulgated in the same manner through notice-and-comment rulemaking. The interactions between DOE and the nuclear industry as a whole led to the promulgation of the contract. The Government witnesses who will testify about the development of the Standard Contract and about the purpose of the various rates that DOE has published are the same in every case pending before this Court. Moreover, all these cases arise from a common operative event in the contractual relationships between the contract holders and DOE regarding its failure to commence the removal of SNF in 1998. All of the SNF plaintiffs are seeking damages allegedly caused by having to store SNF, either now or in the future, while a permanent waste repository is being built. Clearly, the similarity of claims asserted in Indiana Michigan, Commonwealth Edison, and the Yankee cases with the ones asserted in this case satisfy the "substantially similar" or "related" test. C3, Inc., 5 Cl. Ct. at 661.

2. Absent A Stay, There Is A Possibility of Inconsistent Rulings, Giving Rise To Great Hardship Upon The Government

The situation presented in this matter amply supports a finding that the Government would suffer great hardship if the stay were denied. Fairness demands consistency in the resolution of cases with the same operative facts. See Restatement (Second) of Contracts § 211 (1981). Without a stay, there is a substantial likelihood that there will be additional inconsistent

rulings dealing with the same operative facts. In the meantime, the Government would be required to engage in burdensome and duplicative discovery in multiple cases while many of the same issues being investigated are being decided at trial.

The Court in the Commonwealth Edison and Yankee Atomic cases have ordered that the matters raised in the Government's rate of SNF acceptance motion will be the subject of a trial in each case and that the Court will identify a rate of SNF acceptance for inclusion in the Standard Contract. However, the Court in Indiana Michigan has granted summary judgment to the plaintiff based upon a rate of SNF acceptance that the plaintiff in that case proposed. In addition, the Court in Yankee Atomic will also apparently conduct a trial upon the issues raised in the Government's motion relating to Greater-Than-Class-C radioactive waste.[4] Consequently, significant disparities of opinion have already arisen from these cases. Because we respectfully disagree with the Court's conclusions that there are factual issues required for resolution of these matters, we cannot stipulate to apply the rationale of the Court's existing decisions to the remaining SNF cases pending in this Court. However, if other judges of this Court have to decide the Government's motions independently, before the "lead" cases are complete, there is a substantial likelihood that more disparate rulings regarding the same operative facts will be issued.

Because of the high degree of commonality between these lawsuits, fairness demands that each plaintiff receives treatment from the Court of Federal Claims which is consistent with other plaintiffs which have similar claims. See Restatement (Second) of Contracts § 211 (1981) (if "a party to an agreement signs or otherwise manifests assent to a writing and has reason to believe

---

[4]The Court in Commonwealth Edison declared the Government's GTCC motions not to be ripe, while the Court in Indiana Michigan ruled that it was moot.

that like writings are regularly used to embody terms of agreements of the same type," such "a writing is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing"). Additionally, inconsistencies in the Court's decisions could also impose inconsistent performance obligations upon DOE when it begins SNF acceptance. That is, through application of the doctrine of collateral estoppel, the various plaintiffs could attempt to hold DOE to differing and inconsistent performance requirements, with which it may be impossible for DOE to comply. Allowing the litigants to focus upon one or two cases for the purpose of deciding the common legal issues raised, and then applying the principles established to the cases that were stayed, ensures that each of the litigants is treated fairly and consistently.

Furthermore, allowing discovery to proceed while the Government is in the process of defending other cases that are, procedurally, much farther along places an unfair burden on the Government. Virtually all of the facts relating to the development of the Standard Contract and those relating to the rate and schedule issues are common to all the SNF cases. Not only does that mean that all the Government witnesses, documents, and other sources of information are the same, but nearly all those witnesses and document custodians are currently involved in the trials or are providing discovery in the older SNF cases. It is simply not possible to stretch those resources any further by requiring them to respond to the newly-filed SNF plaintiffs. Rather than courting the chaos and the delay that would arise if the new SNF cases were allowed to go forward, a stay should be issued permitting the cases that were filed years ago to proceed first.

3. <u>The Requested Stay Is Of A Reasonable Duration</u>

The final determination that the Court must make in deciding whether to grant a stay is whether the requested stay will be of a reasonable duration. Defendant proposes that the Court

extend the stay until there has been a final ruling in Commonwealth Edison Co. v. United States, No. 98-621C (Hewitt, J.); Yankee Atomic Electric Co. v. United States, No. 98-126C (Senior Judge Merow); and Indiana Michigan Power Co. v. United States, No. 98-486C (Hodges, J.).

First, granting a stay until the Court decides these three cases is reasonable for much the same reason that granting a stay in this case is equitable -- a stay would have the effect of promoting consistency of treatment of plaintiffs who raise substantially similar claims in a substantially identical manner and may, in all likelihood, offer a resolution of those claims faster and more efficiently than would be obtained through a separate proceeding in this matter. Second, the duration of the requested stay would not have an unfair impact upon the plaintiffs in this case. The purpose of the stay is to obtain guidance as to the proper resolution of the issues in every SNF case. Rather than having multiple, substantially similar cases proceed through the system, it is in every party's interest for the developed cases to be decided, thereby providing guidance and permitting a more efficient resolution of the other cases. Therefore, waiting to receive that guidance from the final resolution of the cases that are currently scheduled for trial is a reasonable duration.[5]

## II. IF THE COURT DOES NOT GRANT A STAY, COORDINATED DISCOVERY IS NECESSARY

If the Court chooses to deny our request for a stay, we respectfully request that there be a coordinated process for discovery in all of the newly-filed SNF cases. Again, all of the SNF cases are grounded upon the same set of operative facts relating to the rate and sequence of DOE's obligation to accept the utilities' SNF. The Government cannot to respond to all the

[5]After the decisions in Commonwealth Edison, Indiana Michigan, and Yankee Atomic, we suggest that the Court schedule a status conference regarding the stay so that the parties can discuss how to proceed in this case.

discovery requests seeking information relating to those issues in the newly-filed SNF while, at the same time, those resources are being employed for trial or to respond to discovery requests in the SNF cases that were filed years ago. Some coordination among the plaintiffs is not just desirable, it is essential.

Additionally, resolution of the rate and schedule issue is necessary prior to any rational exploration of an SNF plaintiff's damages. The SNF plaintiffs' damages are largely a function of the costs a particular SNF plaintiff has incurred minus the costs it would have incurred if not for DOE's breach. That quantum is vastly different if, as most of the SNF plaintiffs are claiming, DOE was obligated to accept SNF at the rate of 3,000 metric tons/year rate versus the lower rate DOE published pursuant to the Standard Contract. Consequently, damages discovery cannot rationally proceed until there has been some determination of the rate and sequence of acceptance required by the Standard Contract.

Since discovery regarding the rate and schedule issues primarily require discovery from the Government and because resolution of the rate and sequence of SNF acceptance is necessary before the parties can reasonably explore damages, the Court should direct the parties to seek discovery of the rate and schedule issues first and in a coordinated manner.[6] Given the number of newly-filed SNF plaintiffs, coordination among the plaintiffs is essential to permit the plaintiffs access to information from the Government. After discovery on these issues has been completed, the parties can then seek further guidance from the Court.

---

[6]All of the SNF plaintiffs whose cases were pending in 2001 have already availed themselves of a similar discovery process.

CONCLUSION

For these reasons, we respectfully request that the Court enter an order granting this motion to stay all proceedings in this matter until decisions have been issued in Commonwealth Edison, Yankee Atomic, and Indiana Michigan Power. If a stay is not granted, the plaintiffs should be required to engage in coordinated discovery on the rate and schedule issues.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Scott R. Damelin
SCOTT R. DAMELIN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 307-1011
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
MARTHA S. CROSLAND
Office of General Counsel
U.S, Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

March 30, 2004

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of March 2004, a copy of the foregoing "DEFENDANT'S MOTION TO STAY ALL PROCEEDINGS OR, IN THE ALTERNATIVE, FOR COORDINATED DISCOVERY REGARDING RATE AND SCHEDULE ISSUES" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Scott R. Damelin